## UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF GEORGIA —ROME DIVISION

|  |  |  |
|---|---|---|
| **MORGAN BOSTON** | ) | |
| **Plaintiff** | ) | **Case No. 4:24-cv-00004-** |
| | ) | **WMR-WEJ** |
| **v.** | ) | |
| | ) | **JURY DEMANDED** |
| **GARY E. LESTER** | ) | |
| **Defendant** | ) | |

## BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AND FOR IMPOSITION OF SANCTIONS

Comes now Defendant, Gary E. Lester ("Defendant"), through counsel and pursuant to Federal Rules of Civil Procedure 12(b)(1) and the doctrine of judicial estoppel, and respectfully requests this Court to dismiss Plaintiff Morgan Boston's ("Plaintiff") Complaint. Defendant also moves this Court for a finding that this action was brought in bad faith and for the purposes of harassment pursuant to 15 U.S.C. § 1692k(a)(3) and further find that Plaintiff's attorney, Matthew T. Berry ("Attorney Berry") has multiplied the proceedings in this case "unreasonably and vexatiously" pursuant to 28 U.S.C. § 1927. In support, Defendant would show:

### I.    Factual Background

The Complaint alleges Defendant sent Plaintiff a letter seeking to collect an $88 payday loan debt on behalf of his client. (*See* Complaint, ¶¶ 9-10). The letter stated: "Re: American Trust Cash Advance $88.00 Plus interest, if applicable. Please contact this office immediately with respect to the above referenced account." (*See*

1

Complaint, p. 4).  Because of this letter and its contents, Plaintiff filed the present suit. (*See* Complaint generally).

## II.   Law and Argument

### A. Standard of Review – Federal Rule of Civil Procedure 12(b)(1)

Article III of the Constitution limits the jurisdiction of federal courts to actual "cases" and "controversies."  U. S. Const. art. III, § 2. "One element of the case-or-controversy requirement is that plaintiffs must establish that they have standing to sue." *Clapper v. Amnesty Int.'l USA*, 133 S. Ct 1138, 1146 (2013) (internal quotation and citation omitted). The plaintiff bears the burden of establishing standing by clearly alleging facts demonstrating, "(1) [they have] suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envt'l. Serv. Inc.*, 528 U.S. 167, 180-81 (2000); *see also Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

At the pleading stage, "[t]hreadbare recitals of the elements of [standing], supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Rather, "[t]he plaintiff must clearly

allege facts demonstrating each element" of standing. *Spokeo*, 136 S. Ct at 1547. Further, "[a] bare procedural violation" of a statute, by itself, does not satisfy the concrete injury requirement without actual, real-world harm." *Spokeo*, 136 S. Ct. at 1549; *see Buchholz v. Meyer Njus Tanick*, 946 F.3d 855, 861 (6th Cir. 2020). The injury also cannot be based on speculation about a future harm that is not "certainly impending," like anxiety over potential future litigation. *Clapper*, 133 S. Ct. at 1141.

Dismissal on the basis of standing may be had by a facial or factual attack on the Complaint. "[A] factual attack on a complaint challenges the existence of subject matter jurisdiction using material extrinsic from the pleadings, such as affidavits or testimony."[1]

## B. Plaintiff's FDCPA and GFBPA Claims

Plaintiff claims the debt collection letter: (1) implies litigation is imminent by requesting "immediate" contact, in violation of 15 U.S.C. §§ 1692e(5) and 1692e(10) (*See* Complaint, ¶¶ 11, 21(c), 29); (2) falsely states that interest may be applicable to the debt, in violation of 15 U.S.C. §§ 1692e(2)(A), 1692e(5) and 1692e(10) (*See* Complaint, ¶¶ 10, 13(b), 29-30); and misleadingly suggests attorney

---

[1] *Id.*; *see also Goodman ex rel. Goodman v. Sipos*, 259 F.3d 1327, 1331 n.6 (11th Cir. 2001) (stating, "[a] federal court must always dismiss a case upon determining that it lacks subject matter jurisdiction, regardless of the stage of the proceedings, and facts outside of the pleadings may be considered as part of that determination.); and *Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003) ("The district court may take judicial notice of public records and may thus consider them on a motion to dismiss.").

review, violating 15 U.S.C. §§ 1692e(3) and 1692e(10) (See Complaint, ¶ 12). As to Plaintiff's claim pursuant to the GFPBA (See Complaint ¶¶ 32-44), courts have unanimously held that "representation of clients by a law firm does not come within the FBPA."2

For the reasons stated below, Plaintiff's claims warrant dismissal.

## C. Plaintiff Lacks Article III Standing

### 1. *No Concrete Injury*

As was suggested by the court in *Buchholz*, a plaintiff has two avenues of "proving an injury in fact flowing from [Defendant's] alleged violation of the FDCPA." *Buchholz*, 946 F.3d at 863. First, a plaintiff could allege that the defendant violated the FDCPA in such a manner causing her concrete harm. *Id.* Or second, a plaintiff could allege that the defendant's violation "created a risk of harm that Congress intended to prevent," including intangible harm. *Id.* In determining whether an allegation of "anxiety" is concrete, courts look to "traditional harms." *Id.* at 864. "And in the context of psychological injuries, alleging 'anxiety' alone appears to fall short of a cognizable injury as a matter of general tort law." *Id.* The

---

2 *State ex rel. Doyle v. Frederick J. Hanna & Assocs., P.C.*, 695 S.E.2d 612, 615 (2010); *see also Mamon v. Midland Funding, LLC*, No. 1:13-CV-02301-AT-GGB, 2013 WL 12382685, at *7 (N.D. Ga. Nov. 14, 2013) (holding "[b]ecause the GFPBA does not apply to the conduct at issue in this lawsuit – i.e., debt collection activities by a law firm on behalf of a creditor -- Plaintiff's claim under the GFBPA is due to be dismissed.").

*Buchholz* court noted:

> One source, for example, defines psychological injury as 'the result of exposure to an incident that is mentally and emotionally traumatic because the incident presents a threat to the plaintiff's life: to health, to control over one's life, to peace of mind and enjoyment of life, or even the threat of death itself.'

*Id.* (citing 26 Am. Jur. Proof of Facts 3d 1 n.3 (1994). "So, the conduct must be 'extreme and outrageous' and the emotional harm must be 'severe.'" *Id.*

Here, Plaintiff claims suffering "anxiety and worry" regarding potential litigation due to the language contained in the collection letter. (*See* Complaint, ¶ 21(c)). But Defendant merely requested contact, albeit immediate, about an undisputed debt. Such a straightforward and accurate communication cannot constitute "extreme and outrageous" conduct inflicting "severe" distress. Additionally, anxiety over speculative future litigation generally does not constitute an injury conferring Article III standing. *Clapper*, 133 S. Ct. at 1141. Indeed, "anxiety . . . amount[ing] to the fear of a future harm . . . is rarely cognizable." *Id.*; *see also Buchholz*, 946 F.3d at 865. Stated differently, allegations about possible "future injury" from "potential future" events do not satisfy the "certainly impending" test. *Clapper*, 133 S. Ct. at 1141 (citing *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)).

Accordingly, Plaintiff only speculates she may be sued. However, the collection letter comes nowhere near threatening litigation. Instead, Plaintiff

effectively conjures up threat of litigation then uses the anxiety from that speculation to claim an injury. These are precisely the types of "bizarre, idiosyncratic" interpretations and "[a]llegations of possible future injury" that fail to satisfy Article III standing requirements. *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1194 (11th Cir. 2010) (citations and quotations omitted); *Whitmore*, 495 U.S. at 150 (1990). Additionally, and as discussed in Section D *infra*, Plaintiff is currently in a pending Chapter 13 bankruptcy proceeding, (docket no. 21-40108-bem) (*See* **Exhibit D**), with such bankruptcy being filed on January 29, 2021. (*See* **Exhibit A**).[3] Notably, Attorney Berry is also the attorney of record in Plaintiff's bankruptcy case. (*See* **Exhibit A**). Notwithstanding, Plaintiff's argument that she was forced to consult an attorney with respect to the debt at issue is without merit given the underlying debt is a prepetition debt to which Plaintiff would have had reason to confer with Attorney Berry irrespective of alleged FDCPA violations. (*See* Affidavit, ¶ 4). As the Court is well aware, persons who file for Chapter 13 bankruptcy are protected by an "automatic stay" during the pendency of the case. Indeed, "actions taken in violation of the automatic stay are void and without effect." *Borg-Warner Acceptance Corp. v. Hall*, 685 F. 2d 1306 (11th Cir. 1982). Accordingly, any claims of emotional distress due to fear of "imminent" litigation is ludicrous even to the "least sophisticated consumer."

---

[3]*See supra* note 2 and accompanying text.

As to Plaintiff's second avenue for proving an "injury in fact," courts consider two factors in determining whether a procedural violation under the FDCPA constitutes a "concrete injury": (1) whether Congress intended to prevent the alleged harm, and (2) whether the harm bears resemblance to harms recognized under common law. *Buchholz*, 946 F.3d at 868-70 (citing *Spokeo*, 578 U.S. at 1549). As to the first factor, a bare procedural violation of a statute, without more, cannot satisfy Article III's "concrete injury" requirement. *Id.* at 865 (citing *Spokeo*, 578 U.S. at 1549). Indeed, "just because a plaintiff alleges a procedural violation does not mean the plaintiff has constitutional standing." *Id.* at 867 (citing *Spokeo*, 578 U.S. at 1549). Instead, courts must ask whether Congress intended to prevent the specific harm alleged by "conferr[ing] the procedural rights" under the statute. *Id.* at 868 (citing *Macy v. GC Servs. Ltd. P'ship*, 897 F.3d 747, 754 (6th Cir. 2018) (quoting *Strubel v. Comenity Bank*, 842 F.3d 181, 189 (2d Cir. 2016)).

Accordingly, while Congress broadly sought to prevent abusive debt collection practices under the FDCPA, *see Demarais v. Gurstel Chargo, P.A.*, 869 F.3d 685, 691-92 (8th Cir. 2017), Plaintiff's alleged harms do not stem from abusive tactics or representations falling within that protected scope. As *Buchholz* noted, "[w]e are at a loss for how MNT's letters caused any harm, much less harm that Congress intended to prevent when it enacted the FDCPA." *Buchholz*, 946 F.3d at 870. Similarly, the letter here provided accurate information about an undisputed

7

debt Plaintiff owes. Plaintiff does not plausibly allege Defendant obscured her rights or made misrepresentations that would deprive her of FDCPA protections. Nor does she dispute owing the debt itself. Thus, her subjective anxiety arises solely from groundless speculation, not from abusive debt collection practices that violate rights under the statute. Thus, Plaintiff has not, and cannot, establish standing under the "congressional judgment" prong analyzed in *Id.* at 869 (citing *Demarais*, 869 F.3d at 691-92).

As to the second factor, when considering intangible harms stemming from alleged statutory violations, courts look to whether the alleged harm resembles one historically recognized under the common law. *Id.* at 868-70 (citing *Spokeo*, 578 U.S. at 1549). Again, Plaintiff claims the debt collection letter caused anxiety and worry over potential litigation and interest accrual. (*See* Complaint, ¶¶ 21(c) and 29). But those subjective fears, without more, do not resemble traditionally recognized harms. *See e.g., Buchholz*, 946 F.3d at 870. The collection letter contained no overt threats of litigation or falsely implied the amount of the debt owed. *See id.* at 869 (quoting *Demarais*, 869 F.3d at 691) (noting "the harm Congress identified—being asked to pay a debt not owed—resembles 'the harm suffered by victims of the common-law torts of malicious prosecution, wrongful use of civil proceedings, and abuse of process.'"). Therefore, Plaintiff's idiosyncratic interpretation resulting in alleged anxiety bears no relationship to torts such as malicious prosecution or abuse

8

of process which involve baseless legal actions or threats against a plaintiff.

Finally, and as noted above, Defendant's conduct does not approach the outrageous behavior required for a claim for intentional infliction of emotional distress. *Buchholz*, 946 F.3d at 870. Plaintiff effectively alleges anxiety based on speculation that Defendant violated the FDCPA. Plaintiff identifies no harm from those alleged violations other than inconvenience and purported procedural inconsistencies with the statute. Under *Spokeo* and *Buchholz*, these allegations of statutory inconsistencies devoid of real harm fail to establish a concrete injury. Because Plaintiff fails to meet either avenue to prove a concrete injury, the Complaint should be dismissed on this basis alone.

### 2. *Alleged Harm Not Traceable to Defendant*

For additional grounds, Plaintiff's purported anxiety is traceable only to her own choices, not to the letter itself. As the Sixth Circuit held in similar circumstances, when a consumer "chose not to pay h[er] debts" yet "now fears the consequences of h[er] delinquency[,] such "[s]elf-inflicted injuries fail to satisfy Article III's traceability requirement. *Id.* at 867. Indeed, a key traceability question is whether the plaintiff's injury "is so completely due to the plaintiff's own fault as to break the causal chain." *Id.* at 866. Here, the letter does not threaten suit, much less threaten "imminency," but directs Plaintiff to contact the firm concerning the debt. (*See* Complaint, p. 4). The cause of Plaintiff's alleged "anxiety and worry" is

not due to the language of the letter but, instead, her failure to pay her debts and fear of consequences from that choice. Notably, Plaintiff does not dispute incurring or failing to repay the debt. (*See generally* Complaint). Neither does she plausibly allege the letter contains inaccuracies. (*See generally* Complaint).

As in *Buchholz*, any anxiety that Plaintiff may have had is linked to the fear of consequences of not paying the debt rather than fear of the letter's language itself. *See e.g.*, *Buchholz*, 946 F.3d at 867. Plaintiff may regret her choices, but she cannot conjure standing by blaming Defendant for her anxiety over the possible consequences of her conscious default then claim threats of litigation and inconvenience for having to confer with Attorney Berry about a debt while in bankruptcy. Accordingly, Plaintiff's alleged anxiety is a self-inflicted injury and fails Article III's traceability requirement. Thus, Plaintiff has not demonstrated any concrete, particularized harm *traceable* to the collection letter, much less Defendant. Rather, Plaintiff's own failure to pay acknowledged debts is the cause of her alleged injuries. Accordingly, the Court should dismiss the Complaint pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction.

### D. Plaintiff's Conduct Warrants Judicial Estoppel

Ironically, the only "deceptive practice" within this case is that of Plaintiff and Attorney Berry. In addition to Plaintiff's lack of standing and baseless claims, Plaintiff, through Attorney Berry, flouts her undisputed duty to disclose potential

assets in her active bankruptcy by simultaneously pursuing undisclosed FDCPA lawsuits to enrich herself. Indeed, through investigation, it appears that Plaintiff and Attorney Berry are manufacturing lawsuits. Indeed, Defendant uncovered Plaintiff's pattern of litigation misconduct upon investigating her court filings.[4] (*See* Affidavit, ¶ 3). Remarkably, these cases were filed by Attorney Berry who failed to disclose numerous potential claims to the bankruptcy court in docket no. 21-40108-bem. (*See* **Exhibit D**). With respect to the present claims, despite having been incurred prior to January 29, 2021—the date in which Plaintiff filed for bankruptcy (*See* Affidavit, ¶ 4)—Plaintiff did not schedule or amend her filings to disclose the debt owed to Defendant's client in question.

Accordingly, the doctrine of judicial estoppel was "intended to prevent the perversion of the judicial process and protect its integrity." *Slater v. US Steel Corp*, 871 F. 3d 1174, 1180 (11th Cir. 2017). "The goal of the doctrine is to prevent parties from 'playing fast and loose with the courts.'" *Taylor v. Ford*, 185 F. Supp. 2d 1338, 1340 (N.D. Ga 2002) (quoting *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F3d 355, 358 (3rd Cir. 1996)). Stated differently, "the doctrine of judicial

---

[4] A search of the Northern District of Georgia docket revealed Plaintiff recently filed multiple FDCPA claims[4]: *Morgan Boston v. TrueAccord Corp et al*, 4:23-cv-00211-WMR, filed September 20, 2023; *Morgan Boston vs. Consumer Adjustment Company, Inc*, 4:23-cv-00248-WMR-WEJ, filed October 25, 2023; *Morgan Boston v. AFNI, Inc*, 4:23-cv-00301-WMR-WEJ, filed December 26, 2023; and the present case—*Morgan Boston v. Gary E Lester*, 4:24-cv-0004-WMR-WEJ, filed January 2, 2024.

estoppel rests on the principle that 'absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory.'" *Slater*, 871 F.3d at 1180–81 (quoting *Ryan Operations G.P. v. Santiam-Midwest Lumber Co*., 81 F.3d 355, 358 (3rd Cir. 1996) (quoting 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4477 (1981)).

To be fair, "[j]udicial estoppel should not be applied when the inconsistent positions were the result of "inadvertence[] or mistake" because judicial estoppel "looks towards cold manipulation and not an unthinking or confused blunder." *Slater*, 871 F.3d at 1181 (quoting *Johnson Serv. Co. v. Transamerica Ins. Co*., 485 F.2d 164, 175 (5th Cir. 1973)). A "debtors failure to satisfy its statutory duty [to amend its schedule] is 'inadvertent' only when in general, the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment." *In re James*, 487 BR at 593 (citing *Burnes v. Pemco Aeroplex, Inc*., 291 F3d. 1282, 1286 (11th Cir. 2002)).

Accordingly, the Eleventh Circuit prescribes a two-part test for judicial estoppel. The district courts analyze: (1) whether the party took an inconsistent position under oath in a separate proceeding; and (2) whether these inconsistent positions were intended to make a mockery of the judicial system. *See Slater*, 871 F.3d at 1181. Plaintiff readily meets both factors. As to the first factor, it is

12

undisputed Plaintiff did not amend her sworn filings to reflect the FDCPA claims before this court. *See e.g.*, *Robinson v. Tyson Foods, Inc*., 595 F.3d 1269, 1275 (11th Cir. 2010) (failure to amend schedules to include pending claims is an "inconsistent position" for judicial estoppel purposes). Although precedent holds that the second prong of the two-part test is not a "one-size-fits-all approach," considering the underlying facts as a whole, indicia of mockery exists.[5]

As to the first factor, it is undisputed Plaintiff's current position is inconsistent with her position before the Bankruptcy Court. In *Taylor v. Ford*, a case out of the Northern District of Georgia, the court was confronted with a plaintiff who had taken an inconsistent position and then modified the bankruptcy schedules once judicial estoppel was asserted. The Court likened the case to *Scoggins v. Arrow Trucking*, 92 F. Supp. 2d 1372 (S.D. Ga. 2000), which held that a bankruptcy petitioner could not proceed with his tort action when he disclosed the lawsuit in the bankruptcy matter only after being forced to do so by his adversary. *See id.* The pro se plaintiff in *Taylor* asserted that the doctrine should not be applied because he did not realize that he was asserting inconsistent positions. *See id.* Despite the plaintiff's status as a pro se

---

[5] *Slater*, 871 F.3d at 1184 (citing *De Leon v. Comcar Indus., Inc*., 321 F.3d 1289, 1292 (11th Cir. 2003) ("Even though *Burnes* and *Barger* both involved Chapter 7 bankruptcies, we have extended their reasoning to cases involving Chapter 13 debtors. We acknowledged that a Chapter 13 debtor would always have a potential motive to conceal a civil claim from creditors so as to "keep the proceeds for herself and den[y] the creditors a fair opportunity to claim what was rightfully theirs." *See Robinson*, 595 F.3d at 1275-76.").

litigant, the court concluded that an attorney was not necessary to meet the disclosure requirements as such requirements are unambiguous on their face. *See id.* The court's holding in *Taylor* should likewise apply, especially given that Plaintiff is not pro se but, instead, is represented by Attorney Berry whose primary practice involves bankruptcy and FDCPA claims.[6] Yet, Attorney Berry ignored his well-established duties as a fiduciary and officer of the court by taking these inconsistent positions. For reasons discussed herein, this Court should show the law has sharper teeth.

Second, it is apparent Plaintiff had a motive to conceal the claims asserted against Defendant. In *In re James*, 487 B.R. 587 (Bankr. N.D. Ga 2013), the court touched on the issues of "motive" in the judicial estoppel context. In that case, plaintiff (**represented by Matthew T. Berry**) sought to reopen a Chapter 13 case to add claims to the bankruptcy schedules that were not previously disclosed. *See id.* The court focused its analysis on whether the Chapter 13 plan provided 100% payment to debtor's creditors. *See id.* If the plan provided for less than 100%

---

[6]*Link v. Wabash R. Co.*, 370 U.S. 626, 633–34 (1962) (quoting *Smith v. Ayer*, 101 U.S. 320, 326 (1879)) (attributing the misconduct of petitioner's attorney to petitioner, stating, "[t]here is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent."); *United States v. Boyle*, 469 U.S. 241, 105 S.Ct. 687, 83 L.Ed.2d 622 (1985) (penalizing the client for counsel's failure to timely file a tax return); *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 397 (1993) (holding that the "Court of Appeals in this case erred in not attributing to respondents the fault of their counsel.").

payment, the court found that a debtor has a motive to conceal potential claims from the estate. *See id.* Here, Plaintiff's Chapter 13 plan is a pro-rata plan which pays unsecured creditors a small dividend. (*See* **Exhibit D**). Accordingly, Plaintiff "had a motive to conceal her claim because if she realize[s] any proceeds from the suit prior to the discharge of her bankruptcy . . . she could have kept the proceeds for herself without their becoming part of the bankruptcy estate and going to her creditors to satisfy her debts." *Robinson*, 595 F.3d at 1275.

Additionally, Plaintiff may not rely on "inadvertence" or "mistake" as a defense because the same attorney representing her in the bankruptcy case asserted the present claims without amending her bankruptcy schedules.[7] As further support, Plaintiff, through Attorney Berry, omits other FDCPA claims brought in the Northern District of Georgia. These inconsistent positions cannot be through inadvertence, but rather through thoughtful deliberation and "intentional contradiction." *See Am. Nat'l Bank of Jacksonville v. FDIC*, 710 F.2d 1528, 1536 (11th Cir.1983). Thus, given the circumstances, the only plausible inference is a strategy to abuse the courts and profit at the expense of others.

As further support, Plaintiff's extensive background with bankruptcy procedures and knowledge of the obligations thereto is evidenced by her history of filings predating this lawsuit:

---

[7] *See supra* note 8 and accompanying text.

16-41355     Chapter 13   filed 6-10-2016     Dismissed 8-15-2018;

18-42028     Chapter 13   filed 8-31-2018     Dismissed 4-03-2019; and

19-40810     Chapter 13   filed 4-05-2019     Dismissed 1-26-2021.

Plaintiff has been under an "automatic stay" continually for nearly 7 years. Plaintiff and, certainly, Attorney Berry are well aware of the obligation to disclose potential assets during the pendency of a bankruptcy proceeding. *See Robinson*, 595 F.3d 1269; *Ajaka*, 453 F. 3d 1339; and *Burnes*, 291 F.3d 1282; *see also* 11 U.S.C. § 521(1); and 11 U.S.C. § 541(a). However, they have consistently failed to do so. Such omissions dispel any claim of inadvertence.

In further support of a finding that Plaintiff and her attorney are "playing fast and loose with the courts,"[8] rather than notifying Defendant of Plaintiff's pending Chapter 13 bankruptcy upon receipt of the letter (*See* Affidavit, ¶ 5), Plaintiff, through Attorney Berry, generated a boilerplate response letter as a ruse. See **Exhibit B**.[9]   Under § 1692c, a debt collector's communications following notice of a consumer's "refusal to pay a debt" is a violation. Plaintiff's response to the collection letter is nearly identical to the letters generated by the Matthew Berry law firm in other FDCPA cases. The *Matthew Berry* form letter reads:

> I have been contacted about the account that I had with _____.
> This is not the only debt I have unfortunately. I have had inconsistent
> income and will not be paying on this account. I have had interruptions

---

[8] *Taylor*, 185 F. Supp. at 1340 (quoting *Ryan Operations*, 81 F3d 355 at 358).
[9] *See supra* note 2 and accompanying text.

in my income and I have had to deal with other personal difficulties.

*See e.g.*, **Exhibit C**.[10] Yet, Plaintiff's response letter suspiciously omits her bankruptcy status. Such omission tends to suggest the letter is designed to spur FDCPA technical violations upon any reply by a creditor's collector. Stated differently, Plaintiff's response letter, if responded to, essentially entraps the debt collector and generates a FDCPA claim.[11] Indeed, if a creditor's collector responds to Plaintiff's letter, she and Attorney Berry seize on the ambiguity of the letter claiming, "Plaintiff's statement that she will not be making a payment on the account was a refusal to pay the account" and "Plaintiff's written correspondence was sent to Defendant's with the intention that Defendants cease contacting Plaintiff about the debt."[12] This alleged "intention" that creditor cease contacting Plaintiff is communicated obscurely without disclosing that Plaintiff is in a bankruptcy and, thus, under the protection of an automatic stay.

Moreover, it is well-established that a plaintiff has a continuing duty to disclose potential assets in bankruptcy schedules. *See Robinson*, 595 F.3d 1269; *see also* 11 U.S.C. § 521(1); 11 U.S.C. § 541(a). Of course, Plaintiff's failure to disclose

---

[10] *See supra* note 2 and accompanying text.

[11] *See e.g.*, *Morgan Boston v. AFNI, Inc*, 4:23-cv-00301-WMR-WEJ, filed December 26, 2023, Complaint at Paragraph 15 and 16; *Katelyn Garner v. USCB Corporation*, 2:22-cv-00041-RWS-JCF, filed March 1, 2022, Complaint at Paragraphs 17-19; and *Tary Watts v. Portfolio Recovery Associates, LLC*, 1:23-cv-00074-CAP-JEM, filed January 6, 2023, Complaint at Paragraphs 15-22; *see also* 15 U.S.C. § 1692c.

[12] *See supra* note 13.

these potential assets enables her to divert lawsuit proceeds from creditors. Again, having maintained near-constant bankruptcy status for seven years, Plaintiff, and certainly Attorney Berry, can hardly profess ignorance. Notwithstanding, although "ignorance of fact may excuse; ignorance of the law does not excuse." *Advanced Estimating Sys., Inc. v. Riney*, 130 F.3d 996, 998 (11th Cir. 1997); *see also Taylor*, 185 F. Supp. at 1340. Plaintiff, to date, has unreasonably and improperly withheld notice of numerous civil claims, including the claims before this Court, as a potential asset in her ongoing bankruptcy proceeding while, at the same time, concealing her bankruptcy status from Defendant and this Court.

A pattern of omission and abuse of the courts can be gleaned from the bankruptcy schedules in docket no. 21-40108-bem. (*See* **Exhibit D**). Accordingly, Defendant urges the Court to apply the equitable doctrine of judicial estoppel. Allowing the present lawsuit to proceed in light of such evident concealment and gamesmanship would erode judicial integrity. This Court should make clear that Plaintiff, and her attorney, may not exploit the courts to materially advantage themselves through omission and outright concealment. Precedent holds that these failures are inexcusable and warrant dismissal.[13] The Court should therefore dismiss this action as judicially estopped.

### E. 15 U.S.C. § 1692k(a)(3) and Court's Inherent Authority to Sanction

---

[13] *See supra* note 5 and accompanying text.

Plaintiff's orchestrated scheme to profit from abusive FDCPA litigation qualifies as bad faith misconduct and for the purpose of harassment under 15 U.S.C. § 1692k(a)(3), warranting fee-shifting sanctions. Section 1692k(a)(3) of the FDCPA provides, in pertinent part:

> On a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs.

When analyzing this issue, the Northern District of Georgia has indicated that the Eleventh Circuit has provided little guidance and has therefore looked to the law of other circuits. *Black v. Equinox Financial Management Solutions*, 444 F. Supp. 2d 1271 (N.D. Ga 2006). The court elucidated:

> [S]everal courts in other circuits have considered the issue. In *Shah v. Collecto, Inc*., No. Civ. A XXXX-XXXX, 2005 WL 2216242, at *14 (D.Md. Sept. 12, 2005), for instance, a federal district court held that 'bad faith is not simply bad judgment or negligence, but implies the conscious doing of a wrong because of a dishonest purpose or moral obliquity; . . . it contemplates a state of mind affirmatively operating with furtive design or ill will.' (quoting *Black's Law Dictionary* 139 (6th ed 1990)).

*Black*, 444 F. Supp. 2d at 1275. Additionally, the Sixth Circuit, relying, in part, on *Jacobson v. Healthcare Financial* Services, 434 F. Supp. 2d 138, 138-39 (E.D.N.Y. 2006), affirmed the district court's grant of summary judgment, stating, "[w]e echo *Jacobson's* sentiments and concerns. Lamar fits the description of *Jacobson's* hypothetical consumer to a tee, and we will not 'countenance lawsuits based on

frivolous misinterpretations or nonsensical assertions of being led astray.'" *Fed. Home Loan Mortg. Corp. v. Lamar*, 503 F.3d 504, 514 (6th Cir. 2007) (citing *Jacobson*, 434 F. Supp 2d at 138)). In *Jacobson*, the court reasoned:

> Ironically, it appears that it is *often the extremely sophisticated consumer who takes advantage of the civil liability scheme defined by this statute, not the individual who has been threatened or misled.* The cottage industry that has emerged does not bring suits to remedy the "widespread and serious national problem" of abuse that the Senate observed in adopting the legislation, 1977 U.S.C.C.A.N. 1695 1696, nor to ferret out collection abuse in the form of 'obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process." *Id.* Rather, the inescapable inference is that the judicially developed standards have enabled a class of professional plaintiffs.
> ***
> The hypothetical Mr. Least Sophisticated Consumer ("LSC") makes a $400 purchase. His debt remains unpaid and undisputed. He eventually receives a collection letter requesting payment of the debt which he rightfully owes. Mr. LSC, upon receiving a debt collection letter that contains some minute variation from the statute's requirements, immediately exclaims "This clearly runs afoul of the FDCPA!" and - rather than simply pay what he owes - repairs to his lawyer's office to vindicate a perceived "wrong." "[T]here comes a point where this Court should not be ignorant as judges of what we know as men." *Watts v. State of Ind.,* 338 U.S. 49, 52, 69 S.Ct. 1347, 1349, 93 L.Ed. 1801 (1949).

*Lamar*, 503 F.3d at 513-14 (citing *Jacobson*, 434 F. Supp 2d at 138-39).

Here, Plaintiff's conduct epitomizes the very business model criticized by *Jacobson* and adopted by *Lamar*. Plaintiff appears to have made bankruptcy filings and debt collection lawsuits an ongoing revenue stream through purposeful

nondisclosure of claims that, as a matter of law, should not have been filed in the first place absent disclosure. As an illustration, Plaintiff serially invokes bankruptcy protections, omitting required disclosures of potential legal claims, then springs baseless lawsuits on hapless defendants eager for settlement or a favorable verdict, allowing diversion of proceeds from creditors to herself, evidencing the profit-seeking litigation abuse *Jacobson* predicts. Plaintiff's egregious conduct constitutes "bad faith" litigation tactics for the purpose of harassment and warrants fee-shifting under 15 U.S.C. § 1692k(a)(3).

As to Defendant's request for sanctions against Attorney Berry, the Supreme Court has long held federal courts possess "well-acknowledged" inherent powers to "levy sanctions in response to abusive litigation practices." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765 (1980). These powers flow from the judicial institution itself—powers that "are necessary to the exercise of all others." *United States v. Hudson*, 7 Cranch 32, 24 L. Ed. 259 (1812). Additionally, 18 U.S.C. § 401 establishes that federal courts possess inherent authority to sanction the misconduct of any of its officers. *See also* U.S. Const. Art III, Section 1. Fortunately, Congress enacted 28 U.S.C. § 1927[14] to deter officers of the court from committing acts akin

---

[14] 28 U.S.C. § 1927 ("Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.").

to those of Attorney Berry in this case. And where an attorney is not so deterred, §

1927 imposes severe penalties as a reminder.

> As was noted by the Eleventh Circuit,
>
> There are "three essential requirements" for a district court to impose sanctions under § 1927: (1) the attorney must have engaged in unreasonable and vexatious conduct; (2) this conduct must have multiplied the proceedings; and (3) the dollar amount of the sanctions must bear a financial nexus to the excess proceedings in that it may not exceed the costs, expenses, or attorney's fees incurred because of the conduct. *Amlong & Amlong*, 500 F.3d at 1239. For a sanctions award to be appropriate, "something more than a lack of merit is required" because § 1927 "was designed to sanction attorneys who willfully abuse the judicial process by conduct tantamount to bad faith." *Schwartz v. Millon Air, Inc.*, 341 F.3d 1220, 1225 (11th Cir. 2003) (internal quotation marks omitted). An attorney acts in bad faith for purposes of § 1927 when he "knowingly or recklessly pursues a frivolous claim or engages in litigation tactics that needlessly obstruct the litigation of non-frivolous claims."

*Lacayo v. Puerta de Palmas Condo. Assn Inc* ., 842 F. App'x 378, 382 (11th Cir.

2021).[15] "[O]bjectively reckless conduct is enough to warrant sanctions even if the

attorney does not act knowingly and malevolently." *Amlong & Amlong, P.A.*, 500

F.3d at 1241. Certainly, Attorney Berry's acts and omissions warrant fee-shifting

sanctions as no reasonable attorney would pursue claims without disclosing such

---

[15] *See also Norelus v. Denny's, Inc*., 628 F.3d 1270, 1282 (11th Cir. 2010) (citing *Amlong & Amlong, P.A. v. Denny's, Inc*., 500 F.3d 1230, 1239 (11th Cir. 2007) (quoting *Avirgan v. Hull*, 932 F.2d 1572, 1582 (11th Cir. 1991) ("The Eleventh Circuit has long held that "[a]n attorney multiples court proceedings "unreasonably and vexatiously," thereby justifying sanctions under 28 U.S.C. § 1927, 'only when the attorney's conduct is so egregious that it is 'tantamount to bad faith.'" ).

claims to the bankruptcy.[16]

Here, Attorney Berry evidently plays a vital role in this concealment scheme, personally benefiting from attorney's fees and other settlement/judgment awards. As officers of the court, attorneys take oaths to uphold the law and faithfully discharge their duties to advance the ends of justice. Here, Attorney Berry both disregards and undermines the legal system through spurious litigation schemes designed to derive financial gain. Accordingly, sanctioning such deliberate and deleterious misconduct is essential to prevent further erosion of judicial dignity and the administration of justice. Attorney Berry's orchestration of unethical, profit-driven litigation tactics detached from any true individual harm whereby he knowingly asserts claims barred by law most certainly qualifies for imposition of sanctions. Accordingly, Defendant urges this Court to notify the Board of Professional Responsibility of Attorney Berry's misconduct where further justice may be had. As to the issue of attorney's fees, even if the Court were to find that Defendant has not met 15 U.S.C. § 1692k(a)(3), which Defendant would respectfully dispute, 28 U.S.C. § 1927 provides an alternative avenue to right these wrongs which forced Defendant to combat a lawsuit that, as a matter of law, should have never seen this Court's docket.

---

[16] *See* Amlong & Amlong, P.A., 500 F.3d at 1241 (citing *Malautea v. Suzuki Motor Co.*, 987 F.2d 1536 (11th Cir. 1993) (stating that "an attorney's conduct was 'tantamount to bad faith' when he 'either carelessly or deliberately' covered up evidence.").

WHEREFORE, Defendant respectfully requests that Plaintiff's Complaint be dismissed, that the Court find that this action was brought in bad faith and for the purposes of harassment, that Defendant be awarded attorney fees, and any other relief that the Court finds proper.

This 4th day of March, 2024

Respectfully Submitted,

**COPELAND, STAIR, VALZ & LOVELL, LLP**

*/s/ Brian S. Spitler*
**BRIAN S. SPITLER, BPR. 032649**
735 Broad Street, Suite 1100
Chattanooga, TN  37402
Phone:  423-713-7075
Fax: 423-648-2283
bspitler@csvl.law

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and exact copy of this pleading has been served upon counsel of record by regular U.S. Mail or electronic service:

Matthew T. Berry
*Attorney for Plaintiff*
Berry & Associates
2751 Buford Highway, Suite 600
Atlanta, GA 30324
Tele: (404) 235-3334
matt@mattberry.com

This 4th day of March, 2024.

**COPELAND, STAIR, VALZ & LOVELL, LLP**

By: */s/ Brian S. Spitler*
    **BRIAN S. SPITLER, BPR. 032649**

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned hereby certifies that the foregoing BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AND MOTION FOR FINDING OF BAD FAITH PURSUANT TO 15 U.S.C. § 1692k(a)(3) AND THE COURT'S INHERENT AUTHORITY TO IMPOSE SANCTIONS was prepared double-spaced in 14-point Times New Roman pursuant to Local Rule 5.1(C).

**COPELAND, STAIR, VALZ & LOVELL, LLP**


By: *_/s/ Brian S. Spitler_*
**BRIAN S. SPITLER, BPR. 032649**